UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAMELA L. LESTER,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>            Defendant. | NO: 13-CV-3107-TOR<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 17 and 19). Plaintiff is represented by D. James Tree. Defendant is represented by Sarah L. Martin. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

//

//

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158–59 (9th Cir. 2012). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v). At step one, the Commissioner considers the claimant's

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 3

work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe as or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"),

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616F.3d 1068, 1071 (9th Cir. 2010). If

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 5

the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ FINDINGS

Plaintiff filed an application for supplemental security income on August 7, 2010. Tr. 177–80. Plaintiff alleged her disability began August 15, 2008. Tr. 177. Plaintiff's claim was denied initially on December 16, 2010, Tr. 104–08, and denied again upon reconsideration on April 26, 2011, Tr. 114–16. Plaintiff requested a hearing before an ALJ which was held on May 3, 2012. Tr. 51–87, 122. The ALJ rendered a decision denying Plaintiff's claim on July 3, 2012. Tr. 20–39.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 11, 2010. Tr. 22. At step two, the ALJ found that Plaintiff ha the following severe impairments: mild lumbar spondylosis; possible fibromyalgia; questionable widening of the left ankle mortise; obesity; type II diabetes mellitus; mild visual loss with best-corrected visual acuity of 20/40 OU; asthma; depressive disorder, NOS; and history of post-traumatic stress disorder *Id.* At step four, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. Tr. 27. The

ALJ then concluded that Plaintiff's had the RFC to

> perform medium work as defined in 20 CFR 416.967(c) except the claimant is limited to frequent stooping; frequent climbing of ramps and stairs; occasional climbing of ladders, ropes and scaffolds; the avoidance of concentrated exposure to extreme cold, extreme heat, noise, airborne irritants such as fumes, odors, dusts, gases and poor ventilation, and hazards such as moving machinery and heights; and work limited to that which involves only lower semi-skilled (SVP-3) tasks with no more than superficial contact with the general public or teamwork endeavors with coworkers. The claimant also has visual limitations in far acuity and cannot hear whispered conversation in her left ear.

Tr. 29. The ALJ found, at step four, that Plaintiff had no past relevant work. Tr. 37. Proceeding to step five, the ALJ found that based upon Plaintiff's RFC, age, and education, jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. 38. Therefore, the ALJ concluded that Plaintiff is not disabled as defined in the Act.

The Appeals Council denied Plaintiff's request for review on August 5, 2013, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1–6; 20 C.F.R. §§ 404.981, 416.1484, 422.210.

## ISSUES

Plaintiff essentially raises four issues for review, albeit, not articulated in this manner:

1) Whether the ALJ erred in not crediting Plaintiff's subjective statements regarding the intensity, persistence, and limiting effect of her symptoms.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 7

2) Whether the ALJ erred by not properly assigning the appropriate weight to the various medical opinions.

3) Whether the ALJ erred in determining Plaintiff's RFC and by presenting the incomplete RFC in a hypothetical to the vocational expert.

4) Whether the ALJ erred by applying an erroneous standard in determining whether Plaintiff was disabled and whether that error was harmless.

*See* ECF No. 17 at 8.  The Court examines each contention in turn.

DISCUSSION

**A. Plaintiff's Subjective Statements**

Plaintiff contends that the ALJ erred in concluding that Plaintiff's statements regarding the intensity, persistence, and limiting effect of her symptoms were not credible.  Specifically, Plaintiff argues evidence that Plaintiff engages in normal daily activities "does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled." ECF No. 17 at 14 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. §§ 416.908, 416.927.  A claimant's statements about his or her symptoms alone will not suffice.  20 C.F.R. §§ 416.908, 416.927.  Once an impairment has been proven to exist, an ALJ "may not

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 8

reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment.  *Id.*  This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured."  *Id.* at 347 (quotation and citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is unreliable, so long as the ALJ makes "a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  In making such a determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.*  If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must specifically identify the testimony she or he finds not to be credible and

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 9

must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

In this case, the ALJ observed there is evidence of malingering. Tr. 33–34. Dr. Jay M. Toews performed a psychological examination of Plaintiff on October 20, 2010. Tr. 314. As part of the examination, Dr. Toews administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"). Tr. 313. Dr. Toews concluded that the results of the test were invalid and "suggest [Plaintiff] either responded randomly without reference to item content, or deliberately over-endorsed unusual items in an attempt to present herself with significant psychopathology." Tr. 320. Dr. Toews also administered the SIMS to Plaintiff. He observed that her score of 31 is "far above the cutoff score of 14 above which scores are considered to indicate flagrant attempts to simulate or feign a range of cognitive and psychiatric problems." Tr. 319. It was Dr. Toews' conclusion that Plaintiff had attempted to present herself with significant mental problems. Tr. 320.

The ALJ also took note of the observations of Amy Laws, a registered nurse who treated Plaintiff after she was in a car accident in March 2011. Tr. 25–26. In her notes, Laws observed that while Plaintiff stated her pain was "10/10," Laws saw Plaintiff laughing with her mother and watching television. Tr. 503. The ALJ found this to be further evidence of "possible magnification of symptoms." Tr. 34.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 10

In addition to evidence of malingering, the ALJ identified multiple inconsistent statements made by Plaintiff that further impugned her credibility. Contrary to Plaintiff's assertion, the ALJ did not use Plaintiff's daily activities in-and-of-themselves as evidence of her inability to perform basic work functions. Instead, the ALJ compared multiple statements Plaintiff has made about her ability to perform daily activities and found them to be inherently inconsistent. Tr. 28. For example, Plaintiff testified at her hearing that she suffered from such severe social anxiety that she will "stay cooped up in the trailer" with the door locked except for when her boyfriend is around or when she smokes a cigarette. Tr. 30; 75. However, Plaintiff stated to Dr. Toews that she has quite a few friends, that she tries to spend as much time outside of her small motor home as possible, and enjoys roaming around the trailer park socializing and "acting as kind of camp counselor, listening to troubled women relate their difficulties." Tr. 28; 317–18. Inconsistencies in a claimant's statements are valid grounds upon which to base credibility descriptions. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation . . . .").

The ALJ's decision details, over the course of five pages, Tr. 30–34, the multiple inconsistencies in Plaintiff's statements as relate to both her alleged physical impairments and her alleged psychological impairments. The ALJ's recitation of

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 11

these inconsistencies and observation that there was probable malingering provides specific, clear, and convincing reasons to discredit claimant's testimony. The Court finds the ALJ's reasons are sufficient to conclude that that "the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958.

### B. Medical Opinions

Plaintiff asserts the ALJ erred in rejecting a number of medical opinions on the grounds that they were inconsistent with Plaintiff's demonstrated ability to perform daily activities. Plaintiff asserts again that she should not be punished for attempting to lead a normal life.

However, in situations where medical opinions conflict with a claimant's self-reported ability to perform daily activities, it is the ALJ's duty to resolve the conflicting evidence. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600–601 (9th Cir. 1999). In rejecting a medical opinion, the ALJ may rely in part on the fact that it is not consistent with a plaintiff's demonstrated ability to perform daily activities. *Id.* at 602.

Moreover, in this case, the ALJ decided to give little or no weight to the opinions for a number of reasons, only one of which was that they were inconsistent with Plaintiff's self-reporting. For example, the ALJ observed that the medical opinions of the unidentified registered nurse, Dr. Dick Moen, Dr. Trula Thompson, mental health specialist Russell Anderson (cosigned by Dr. Phillip

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 12

Rodenberg), registered nurse Sarah Porter, and mental health specialist Laurie Jones were not based upon actual clinical observations of psychotic or other severe symptomatology.[1]  Tr. 36–37.  These opinions were instead based upon Plaintiff's subjective statements which the ALJ had not credited.  An ALJ may reject medical opinions based "'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  The ALJ also concluded that these opinions ran counter to the

---

[1] Plaintiff asserts this is factually incorrect as "Mr. Anderson/Dr. Rodenberger (sic) observed severe depression in the form of low energy, audio hallucinations, poor concentration, poor motivation, negative expectations, short-term memory loss, and time loss."  ECF No. 17 at 11.  The form filled in by Mr. Anderson and co-signed by Dr. Rodenberg merely states that the symptom of "depression" was observed, and it was Mr. Anderson and Dr. Rodenberg's opinion that the symptom of depression would affect work activities in the manners listed.  The only "observed" symptoms detailed on the attached mental health status summary were Plaintiff's self-reported depressive mood, disorientation in time, and an auditory hallucination to "kill."  Tr. 301.  Plaintiff also asserts that Dr. Moen performed a clinical psychological evaluation, but that examination was also based upon self-reporting, Tr. 513, and not the objective tests such as those used by Dr. Toews.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 13

greater weight of the medical evidence in the record. Resolution of conflicting medical opinions is solely the function of the ALJ, and this Court must affirm the ALJ's resolution if it is supported by substantial evidence. The ALJ discussed each opinion in turn, set out a detailed interpretation of the results, and provided reasons they were assigned little or no weight. Tr. 36–37. The ALJ's reasons were based upon substantial evidence and the Court therefore defers to the ALJ's resolution of the conflicting medical testimony.

Finally, Plaintiff asserts that the ALJ erred because it did not give full weight to the testimony of Dr. Maria Ho and the unidentified registered nurse as they are "examining medical providers who have a better insight into [Plaintiff's] impairments" than the conflicting opinions of Dr. Minh Vu and the State Disability Determination Services record reviews.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted) (brackets in original). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* In addition, the regulations

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 14

give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists. *Id.* (citations omitted). A physician's opinion may be entitled to little if any weight, when it is an opinion on a matter not related to her or his area of specialization. *Id.* at 1203, n.2 (citation omitted).

A treating physician's opinions are entitled to substantial weight in social security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). However, the ALJ need not accept a physician's opinion that is "brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted). An ALJ may also reject a treating physician's opinion which is "based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. While nurse practitioners are not an acceptable medical source to establish the existence of an impairment, they may

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 15

provide evidence of the severity of the impairment and how it affects a claimant's ability to work.  20 C.F.R. § 400.1513(a), (d).

The ALJ rejected the nurse practitioner's opinion that Plaintiff was limited to sedentary work because it was "limited to his apparent unquestioning reliance upon the subjective allegations of an individual whose credibility has been shown to be quite limited . . . ."  Tr. 36.  The nurse observed impairments to Plaintiff's ankle and back, but only took an x-ray of the ankle and not of Plaintiff's back, the extent of injury to which was not verified by any clinical evidence.  Tr. 289–91. The ALJ also noted that the nurse's opinion that Plaintiff's mobility was restricted in bending, crouching, pulling, pushing, and stooping, conflicted with Plaintiff's self-reported ability "to go for daily walks, ride her bicycle, vacuum, do laundry and water her lawn on a regular basis" as reported in her self-completed function report and as admitted at the hearing.  Tr. 35–36; 76, 233, 235.  The ALJ provided specific and legitimate reasons to weigh the contradicting medical opinions over that of the nurse.

The ALJ assigned Dr. Ho's opinion regarding Plaintiff's work limitations "only some weight" because, while the opinion is "generally consistent with the overall record as a whole . . . , it is noted that the limitations due to claimant's physical impairments are not great."  Tr. 35.  Plaintiff questions the meaning and adequacy of this statement.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 16

The ALJ previously discussed Dr. Ho's report in her step two analysis. There, the ALJ noted that Dr. Ho's examination of Plaintiff indicated that Plaintiff did not demonstrate the tenderness that would be expected of a person suffering from fibromyalgia. Tr. 24, 326. Dr. Ho also opined that Plaintiff had certain physical limitations in sitting or standing for more than 6 hours and in carrying more than 20 pounds on occasion. Tr. 331. While evaluating Plaintiff's RFC, the ALJ noted Dr. Ho's finding that Plaintiff did not exhibit signs of fibromyalgia, and that "no treating or examining physician has ever identified any significant functional loss with respect to the claimant's back condition, which significantly limits her ability to perform basic work activities." Tr. 31. The ALJ concluded that any opinion that Plaintiff was limited to light work was contradictory to the opinions of Dr. Vu and the State Disability Determination Services. The limitations Plaintiff claimed were also contrary to her own self-reported daily activities. The ALJ concluded, after reviewing the medical testimony regarding Plaintiff's physical impairments, that the record established only that Plaintiff had "at most, mild-to-mildly moderate limitations in her ability to engage in basic work activities." Such resolution of contradicting opinions is the ALJ's duty, and the Court reads the ALJ's statement to express the conclusion that Dr. Ho's opinions of Plaintiff's limitations run counter to the general record that has established Plaintiff's physical limitations are not great. The Court concludes that the ALJ

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 17

provided specific and legitimate reasons to credit those other opinions over the opinion of Dr. Ho.

### C. RFC Analysis and Vocational Expert's Hypothetical

Plaintiff argues that the ALJ erred in concluding that she had the RFC to perform medium work. Specifically, Plaintiff contends that the ALJ did not properly take into account the opinions of the unidentified nurse practitioner, Dr. Ho, and Dr. Porter. Plaintiff also alleges that the ALJ's RFC hypothetical question posed to the vocational expert was erroneous because it did not include the standing and sitting restrictions in Dr. Ho's report.

As discussed, *supra*, the ALJ thoroughly evaluated the conflicting medical opinions and provided specific, clear, and convincing reasons to give weight to the opinions concluding that Plaintiff's limitations were not great while giving little or no weight to the contrary opinions. Because the ALJ did not credit these contrary opinions, the work-ability limitations found therein did not have to be included in the Court's RFC analysis. Nor did the ALJ have to include those limitations in its hypothetical to the vocational expert. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The hypothetical the ALJ used was "accurate, detailed, and supported by the medical record," and the vocational expert's response may be relied up. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

//

**D. Legal Standard**

Plaintiff objects to two instances in the decision where the ALJ arguably misstated the legal standard that is applied in social security cases. In the first instance, the ALJ stated that the record did not show "impairments resulting in a complete inability to engage in any and all work activities." Tr. 31. In the second instance, the ALJ stated that none of Plaintiff's physicians ever restricted Plaintiff "from any and all work for 12 continuous months or more because of [disabling physical impairments]." Tr. 31. Defendant concedes that these statements do not represent the applicable legal test, but argues that these two statements are harmless error. It is Plaintiff's burden to establish that she was harmed by these two sentences. *Shinseki*, 556 U.S. at 409-10.

As the ALJ correctly stated at the beginning of her decision, the issue she was to decide was whether Plaintiff was disabled, defined under the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Tr. 20; 42 U.S.C. § 1382c(a)(3)(A). The ALJ provided a thorough, detailed discussion of the various medical opinions and reasons for her conclusions. There is no indication that these two sentences, in the middle of thirty-nine pages of analysis, influenced the ALJ's decision. To the contrary, if the

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 19

ALJ had applied and "any or all work" standard, the ALJ would have just declared Plaintiff to be non-disabled as soon as the ALJ concluded she could perform *some* work, regardless of the type.  Yet, the ALJ concluded that Plaintiff's RFC limited the types of work available to her, and proceeded to evaluate, at steps four and five, whether there existed other substantial gainful employment for which Plaintiff was suitable.  Had the ALJ applied an "any or all" standard, the ALJ would not have reached steps four and five.  A review of the ALJ's entire opinion does not demonstrate that it was influenced by these sentences.  Plaintiff has not established that any error in the statements was consequential to the ultimate determination of her disability status; any error was therefore harmless.  *Molina*, 674 F.3d at 1115.

**IT IS HEREBY ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 17) is **DENIED**.

    2.  Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

    **DATED** October 30, 2014.



THOMAS O. RICE
United States District Judge

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 20